The Illinois Central Railroad Company

*v.*

T. L. Bailey.

*Opinion filed October 23, 1906.*

1. Trial—*when court is not justified in taking case from jury.* A peremptory instruction to find for the defendant for want of evidence can be given only where the evidence given at the trial, together with all the inferences the jury may reasonably draw from it, is so insufficient to support a verdict for the plaintiff that the court would be bound, on that ground, to set it aside.

2. Same—*when action for damage by fire caused by locomotive must go to jury.* If there is evidence fairly tending to show that the fire which destroyed plaintiff's building was caused by sparks which escaped from defendant's locomotive, the fact that the uncontradicted evidence shows the locomotive was equipped with the best appliances for preventing the escape of sparks and was in charge of an experienced and careful engineer, who carefully handled and operated it at the time, does not justify the court in directing a verdict for the defendant.

3. Evidence—*when admitting evidence of sparks escaping from other engines is error.* Where the engine from which it is claimed the sparks escaped which caused the fire that destroyed plaintiff's building is identified, it is error to admit testimony that the witness at another time had seen sparks coming out of some other engine owned by the defendant, but a subsequent direction by the court to the jury to disregard such testimony cures the error.

4. Railroads—*statutory rule as to prima facie case does not depend on defendant's admitting origin of fire.* The statutory rule of evidence as to what will constitute a *prima facie* case in an action against a railroad company for damages from fire caused by a locomotive applies, notwithstanding the origin of the fire is controverted by defendant.

5. Same—*when question of negligent handling of engine is for the jury.* Whether slipping of the wheels of an engine in starting constitutes negligent handling of the engine as respects the causing of sparks to escape is a proper question for the jury, even though defendant's witnesses testify that such slipping is liable to happen with any engineer and is not evidence of improper handling of the engine.

6. Same—*duty of railroad company as to equipping engines with spark arresters.* A railroad company is not required by law to

adopt every new and untried invention to prevent the escape of sparks, but it is bound to exercise the highest degree of diligence in equipping its engines with the best and most approved appliance for that purpose which has been proved by actual test.

7. SAME—*origin of fire may be proved by circumstantial evidence.* In an action for damages from fire claimed to be caused by a locomotive, the fact that the fire was communicated by defendant's engine may be established by proof of circumstances giving rise to an inference of that fact, provided such circumstances constitute a preponderance of the evidence.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Jackson county; the Hon. W. W. DUNCAN, Judge, presiding.

W. W. BARR, F. M. YOUNGBLOOD, and R. J. STEPHENS, (J. M. DICKINSON, of counsel,) for appellant:

Under the motion to exclude the evidence and instruct the jury peremptorily to find the defendant not guilty, a question of law is presented whether or not the facts proven, with all inferences which the jury might justifiably draw therefrom, warrant and support the verdict and judgment. *Foster* v. *Wadsworth-Howland Co.* 168 Ill. 514; *Foster* v. *McKeown,* 192 id. 339; *Railroad Co.* v. *Swift,* 213 id. 307; *Railroad Co.* v. *Schiavone,* 216 id. 275.

The uncontroverted evidence that the engines in question were equipped with the best known appliances and devices to prevent the escape of sparks and brands of fire, and that they had been and were thoroughly inspected and found in first-class condition, furnishes a complete answer to the charge of negligence that the engines were defective and would not prevent the escape of fire. The facts thus shown, coupled with the evidence that the engines, at the time in question, were in charge of skilled, careful and competent operatives and were properly operated and handled, constitute a complete defense to the action and claim for damages, and show that appellee's loss was *damnum absque injuria.*

*Railroad Co. v. Craig,* 14 Ill. App. 407; *Railroad Co. v. Madison,* 81 id. 393; *Railroad Co. v. Quaintance,* 58 Ill. 389; *Railroad Co. v. Larmon,* 67 id. 68; *Railroad Co. v. Pindar,* 53 id. 447.

The *prima facie* case for appellee, had the fact that the fire which occasioned the loss was communicated by appellant's engine been even uncontroverted, was completely overcome and appellant was entitled to the verdict and judgment. In such case there is no right of recovery, and the jury could not justifiably draw from the facts proven any inference of liability of appellant or of a right of appellee to a recovery. *Railroad Co. v. Smith,* 11 Ill. App. 348; *Railroad Co. v. Craig,* 14 id. 407; *Bank v. Railroad Co.* 65 id. 21; *Railroad Co. v. Valodin,* 109 id. 132.

Evidence to show that fire was communicated by other and different engines at other times, particularly in the absence of proof that they were equipped with the like devices and appliances as were the engines in controversy and had been subjected to the like inspection, would not be competent, even as part of plaintiff's evidence in chief, in an action of this kind, and admitting such evidence in rebuttal constituted reversible error. *Bank v. Railroad Co.* 174 Ill. 56.

William A. Schwartz, Hosea V. Ferrell, and Andrew S. Caldwell, for appellee:

On motion to direct a verdict, the real question is whether there is any evidence tending to support the material allegations of the declaration, and not whether, upon weighing the evidence, a verdict against the party making the motion would have to be set aside. *Woodman v. Bank,* 211 Ill. 578; *Frazer v. Howe,* 106 id. 563.

Where the evidence is conflicting, and that produced by the successful party in whose favor the jury find, when considered alone and independent of the opposing testimony, sustains the verdict, it will not be disturbed unless it is manifest the jury have mistaken the evidence or have been governed

by passion or prejudice. *Railway Co.* v. *Peacock,* 82 Ill. App. 241; *Insurance Co.* v. *Mills,* 89 id. 58.

Questions as to the proper equipment and handling of engines, whether the equipment is in good repair, the origin of the fire, and whether the *prima facie* case has been overcome, are for the determination of the jury from the evidence. *Railway Co.* v. *Esten,* 78 Ill. App. 326; *Railroad Co.* v. *Schenk,* 64 id. 24; *Railway Co.* v. *Tripp,* 175 id. 251.

The statutory presumption of negligence arising from the setting of fire by a railroad company's locomotive engine is not refuted by evidence that the engine was equipped with an approved spark arrester in good repair and operated by a competent engineer, where there is testimony that an engine properly equipped and handled would not have set the fire in question. *Railway Co.* v. *Black,* 54 Ill. App. 82; *Railroad Co.* v. *Smith,* 42 id. 527; *Railroad Co.* v. *Helmerick,* 29 id. 270; *Railroad Co.* v. *McCahill,* 56 Ill. 28; *Callaway* v. *Sturgeon,* 58 Ill. App. 159; *Railroad Co.* v. *Spencer,* 47 id. 503.

It was not necessary to prove by direct evidence that the fire in question was communicated from the engine to the Rendleman building. *Railroad Co.* v. *Esten,* 178 Ill. 192.

Mr. Justice Cartwright delivered the opinion of the court:

Appellee brought this suit in the circuit court of Jackson county against appellant to recover the value of a store building, and a stock of merchandise therein situated, in the village of Makanda, which were destroyed by fire on October 10, 1899. There was a verdict for $5000 damages, on which judgment was entered, and the judgment was affirmed by the Appellate Court for the Fourth District.

The defendant asked the trial court to direct a verdict of not guilty, and the court having refused to do so, the defendant excepted to the ruling. It is not contended that the evidence offered by the plaintiff, with the reasonable infer-

ences to be drawn from it, was not sufficient to prove that the fire which destroyed plaintiff's property was communicated by defendant's locomotive engine to a store building, from which it spread through intervening buildings to the plaintiff's property, but it is contended that the *prima facie* case so made was completely overcome and rebutted by uncontradicted evidence offered by defendant that the engine was equipped with the best and most approved appliance for preventing the escape of sparks and fire, and was in charge of an experienced and careful engineer, who carefully handled and operated it at the time. Defendant's railroad runs north and south through the village of Makanda, and before the fire there was a row of store buildings at the base of a very high hill parallel with the railroad track and about one hundred and forty feet east of such track. About nine o'clock in the morning a passenger train went south in two sections. The first section was drawn by engine No. 941, and it was followed in about ten minutes by the second section, drawn by engine No. 912. From ten to thirty minutes after the second section of the train had passed fire was seen coming from the roof of an old unoccupied building near the south end of the row, known as the Rendleman building, which had been used as a restaurant. That building was burned and the fire was communicated to four other intervening buildings, when it reached plaintiff's property and destroyed the building and contents. The weather was very dry and the wind was blowing from the south-west. Witnesses for the plaintiff testified that the engine on the second section discharged sparks and burning cinders, and when the engineer started the engine the wheels slipped and whirled around and a volume of sparks and cinders was emitted and blown toward the Rendleman building. The fire was first seen on the south side of the shingle roof of that building. This evidence fairly tended to prove that the fire was communicated to the Rendleman building from defendant's engine, and it was sufficient to make out a *prima*

*facie* case under the statute which entitled the plaintiff to judgment unless it should be overcome by the evidence for the defendant. (*Chicago and Alton Railroad Co.* v. *Glenny,* 175 Ill. 238.) The court therefore would not have been justified in setting aside the verdict and awarding a new trial for a want of evidence to support the declaration.

There was evidence for the defendant that it had done all that the law required of it in the equipment and management of the engine, but the question whether the *prima facie* case of the plaintiff was overcome depended upon the credibility of the witnesses, a weighing of the evidence and a decision as to where the preponderance lay. It is not correct to say that in every case where the court can see that a verdict for the plaintiff, if returned, must be set aside, a peremptory instruction should be given. An attentive reading of the decisions of this court will show that such an instruction can only be given where the evidence given at the trial, with all the inferences that the jury could reasonably draw from it, is so insufficient to support a verdict for the plaintiff that the verdict must be set aside on that ground. It is not authorized where a *prima facie* case sufficient to support a cause of action is, in the judgment of the court, overcome by contrary evidence. If the court would be bound to set aside a verdict, when returned, for want of evidence sufficient to support it, only the evidence favorable to the successful party being considered, a peremptory instruction should be given. (*Woodman* v. *Illinois Trust and Savings Bank,* 211 Ill. 578.) But if there is substantial evidence tending to prove the cause of action alleged the instruction should not be given.

The court did not err in refusing to direct a verdict of not guilty, and the controversy as to whether the verdict was against the weight of the evidence ended with the Appellate Court.

The evidence identified the engine from which it was claimed that the sparks and fire escaped as the engine draw-

ing the second section of the train. There was no evidence fairly tending to prove that the fire was communicated by any other engine, but the court, against the objection of the defendant, permitted a witness to testify that at another time he had seen sparks coming out of some other engine owned by the defendant, and had seen a hole in a man's hat, and a cinder on top of it which looked like a coal cinder. The engine had nothing to do with either section of this train, and the incident being at another time the court erred in the ruling. (*First Nat. Bank* v. *Lake Erie and Western Railroad Co.* 174 Ill. 36.) That case does not hold, as insisted upon by counsel for the defendant, that it is within the discretion of the court to admit incompetent evidence; but in this case, the court being afterward satisfied that the evidence was incompetent, excluded it and directed the jury not to consider it. It appears to us from the record that the error was thereby cured.

Several instructions given at the request of the plaintiff are complained of. The first gave to the jury the statutory rule of evidence as to what will constitute a *prima facie* case to charge the defendant with negligence, and the second applied that rule to the case, and both are objected to on the ground that the statutory rule is only applicable where the fact that the fire was communicated from an engine is undisputed or uncontroverted. No fault is found with the rule, but the argument is, that it is not to be applied where the fact as to the fire being communicated from an engine is in dispute or controverted. We do not understand that the aplication of the rule is dependent on the question whether the defendant admits the origin of the fire or not. The plaintiff is entitled to the benefit of the rule if he produces evidence sufficient to satisfy the jury of the fact. The second instruction required the jury to believe, from the evidence, that fire and cinders were emitted from defendant's engine and were communicated to the Rendleman building; that the fire was communicated successively to the buildings

situated between the Rendleman building and plaintiff's building, and from thence to plaintiff's building, and destroyed it, and that the fire so communicated by defendant's engine was the natural, direct and proximate cause of the burning of plaintiff's property. It advised the jury that such facts would be full *prima facie* evidence of negligence on the part of the defendant unless it further appeared, from the evidence, that the engine was in good order and was properly handled and managed at the time of the fire. The court did not err in giving those instructions.

The third and fourth instructions are objected to on the ground that they had no support in the evidence and were argumentative and misleading. The principle stated in the third was, that the defendant would be liable to the plaintiff although the engine was equipped with the best and most approved appliance to prevent the escape of fire and cinders, if the jury believed, from the evidence, that the servants of the defendant in charge of the engine carelessly and negligently managed it so as to cause sparks and fire to escape and set fire to the Rendleman building and thereby destroyed plaintiff's property. Counsel say that the only evidence of improper handling was that the wheels slipped in starting, and that defendant's witnesses testified that such slipping was liable to happen to any engineer and was not evidence of improper management. Under the evidence the question was a fair one for the jury, and it was not improper to give the instruction although defendant's witnesses testified as stated. The fourth advised the jury that even if the engine was carefully and properly managed, yet the defendant would be liable if the evidence proved that it was not equipped with the best and most approved appliance for arresting sparks and fire, and for that reason sparks and fire were thrown upon the Rendleman building and caused the destruction of plaintiff's property. The principal objection seems to be that the instruction stated the duty of the defendant too strictly in requiring it to have the best and most

approved appliance, while it was only required to exercise a very high degree of skill in that regard. Every instruction on that question given at the request of defendant was based on the hypothesis that the engine was equipped with the best and·most approved spark arrester and that the highest degree of care was exercised to keep the same in good order. The defendant was not required by the law to purchase or adopt every new invention to prevent the escape of fire which might be in the nature of an experiment, but it was bound to exercise the highest degree of diligence in equipping its engines with the best and most approved appliance which had been proved by actual test. There was no question in this case of any new or untried invention which was claimed to surpass the spark arrester in use. There was no evidence which would render the instructions subject to criticism, and the instructions for both parties stated substantially the same rule. The instructions were not argumentative.

The purpose of the fifth instruction was to inform the jury that the fact of fire being communicated to·the Rendleman building by defendant's engine might be established by proof of circumstances giving rise to an inference of that fact, provided such circumstances constituted a preponderance of the evidence. The objection made to it is that it was argumentative, but we do not so regard it.

The sixth instruction is said to have been objectionable as an abstract proposition. It began with a correct definition of proximate cause, and so far was necessarily abstract in form; but it applied the definition to the facts in this case to enable the jury to determine whether the burning of plaintiff's building and goods was the natural consequence of the setting fire to the Rendleman building and such that it might have been foreseen by any reasonable person. The objection is not well founded.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*