## BALTIMORE AND OHIO SOUTHWESTERN RAILROAD COMPANY v. TRUSTEES OF TUNNELTON LODGE NO. 168, K. OF P., ET AL.

[No. 7,548.   Filed April 18, 1912.]

1. TRIAL.—*Instructions.—Construed as a Whole.*—A cause will not be reversed because a particular instruction may be erroneous where the instructions, when taken as a whole, correctly state the law applicable to the entire case.   p. 222.

2. TRIAL.—*Instructions.—Refusal.*—Where instructions tendered were completely covered by others given by the court, their refusal was not error.   p. 222.

3. RAILROADS.—*Operation.—Fires.—Evidence.—Sufficiency.*—In an action against a railroad company to recover for the destruction of a building by fire, evidence that defendant's engine threw cinders which fell in showers a distance of more than 250 feet from the railroad, and that fires were started along the railroad right of way immediately after the passage of the engine, fully warranted the jury in finding that the destruction of the building was caused by the negligence of defendant.   p. 223.

From Monroe Circuit Court; *John C. Robinson*, Special Judge.

Action by the Trustees of Tunnelton Lodge No. 168 K. of P. against the Baltimore & Ohio Southwestern Railroad Company. The Hartford Fire Insurance Company was made a party defendant on motion of the defendant. From a judgment for plaintiff, the defendant railroad company appeals. *Affirmed.*

*W. R. Gardiner, C. K. Tharp, C. G. Gardiner* and *Edward Barton*, for appellant.

*Brooks & Brooks*, for appellees.

HOTTEL, J.—Appellees, trustees of said lodge, sued appellant to recover damages on account of destruction of proper-

ty by fire, alleged to have resulted from appellant's negligence. The property destroyed was a building in the town of Tunnelton, Lawrence county, Indiana, owned by the Knights of Pythias lodge of said town, together with certain furnishings and paraphernalia belonging to the members of said lodge.

A substituted complaint in three paragraphs, with a general denial to each, presents the litigated issues tendered by the pleadings.

Appellee Hartford Fire Insurance Company was, on motion of appellant, made a defendant to answer as to its interest in the cause of action, on account of its having insured a part of the property destroyed, and because, under its policy, it had the right, under certain conditions, to be subrogated to the rights of its coappellee for the amount of insurance paid to it. Said insurance company filed a cross-complaint, setting up substantially the same cause of action against appellant as that alleged in the complaint, and claiming the right to be subrogated to the rights of its coappellee to the extent of the insurance money paid to it.

No question is raised as to the sufficiency of either the complaint or the cross-complaint, nor is the right of said insurance company to subrogation as prayed questioned, and no further notice of its connection with the case need be taken. A trial by jury resulted in a verdict for appellee in the sum of $2,500, on which the judgment herein appealed from was rendered. A motion for a new trial was overruled, and the ruling on this motion presents the only error assigned and relied on.

The grounds of this motion first discussed relate to the instructions. It is urged that error resulted, harmful to appellant, on account of the refusal of the court below to give each of certain instructions tendered by appellant, and on account of the court on its own motion giving certain other instructions.

No good purpose could be served by copying into this opin-

ion, in whole or in part, the several refused and given instructions, on which such errors are predicated, together with the opinion of the court thereon. It is sufficient to say generally, with reference to the instructions given in the case, that, when taken as a whole, they correctly and accurately state the law applicable to the entire case. They are eminently fair, and gave to appellant no ground for complaint, but, on the contrary, gave it the advantage of every principle of law favorable to its contention which could be said to be applicable, either to the facts on which appellee had the burden of proof, under the complaint, or applicable to the facts of any phase of the defense presented by the evidence. As to the refused instructions, they were, in the main, a correct statement of the law applicable to the case, but, in so far as they were correct and applicable, they were completely covered by others given by the court, and to have given those refused would have involved repetition, which is a practice to be criticised rather than encouraged. It is not necessary to repeat an instruction already given, simply because it appears among those tendered by one of the parties to the suit. *Home Ins. Co.* v. *Sylvester* (1900), 25 Ind. App. 207, 214, 215, 57 N. E. 991; *Oil Well Supply Co.* v. *Priddy* (1908), 41 Ind. App. 200, 204, 83 N. E. 623; *New York, etc., R. Co.* v. *Flynn* (1908), 41 Ind. App. 501, 503, 81 N. E. 741, 82 N. E. 1009.

"It is settled law in this State that instructions are considered with reference to each other, and as an entirety, and not separately or in dissected parts; and if the instructions as a whole correctly and fairly present the law to the jury, even if some particular instruction, or some instruction standing alone, or taken abstractly, and not explained or qualified by others, may be erroneous, the cause will not be reversed." *Eacock* v. *State* (1907), 169 Ind. 488, 502, 82 N. E. 1039. See, also, *Rains* v. *State* (1899), 152 Ind. 69, 74, 52 N. E. 450; *Shields* v. *State* (1897), 149 Ind. 395, 406, 49

N. E. 351; *Indianapolis, Traction, etc., Co.* v. *Miller* (1907), 40 Ind. App. 403, 407, 82 N. E. 113; *Indianapolis, etc., R. Co.* v. *Bennett* (1906), 39 Ind. App. 141, 143, 79 N. E. 389; *Cleveland, etc., R. Co.* v. *Heineman* (1910), 46 Ind. App. 388, 392, 90 N. E. 899; *Sterling* v. *Frick* (1909), 171 Ind. 710, 715, 86 N. E. 65, 87 N. E. 237.

Lastly, it is urged that the verdict is contrary to law and not sustained by sufficient evidence. Counsel on this question say that they "are not unmindful of the well-established rules that when there is some material evidence, the court will not weigh the evidence; nor do we controvert the fact that four witnesses for plaintiffs, Ingle, Link, Collier and Hultz, testified to the emission of sparks of unusual sizes and quantities. * * * What we do contend for is that there is no proof whatever that the appellant was guilty of any negligence in the matter of equipment or repair of its engines, or that it was managed in any other way than the usual way of operating locomotive engines in doing the work of a common carrier of freight. All the evidence on that subject conclusively shows that the engine was equipped with a proper spark arrester; that it was properly installed, and that it was in good condition when it began the work of that day and when it finished the work on that day."

As pertinent to this admission and position taken by appellant's counsel, and to the evidence disclosed by the record, as well, we quote from the decisions of the Supreme Court: In the case of *Cincinnati, etc., R. Co.* v. *Smock* (1893), 133 Ind. 411, 33 N. E. 108, said court at page 416 said: "There was much evidence introduced on the trial of the cause tending to prove that, on the occasion in question, this engine threw an unusual quantity of sparks and coals of fire, and that such coals of fire were of an unusual size. From this evidence the jury could rightfully infer that the fire occurred by reason of the negligence of the appellant."

Again, in the case of *Toledo, etc., R. Co.* v. *Fenstermaker*

(1904), 163 Ind. 534, 72 N. E. 561, the court said at page 537: "With respect to the first proposition it is contended by appellant that there was no evidence that the grass at either time was ignited by sparks from the locomotives. Courts have seldom gone so far as to hold it essential for a plaintiff to prove by direct and positive evidence that the fire complained of escaped from a locomotive. Such fires usually occur in broad daylight, when flying sparks are not plainly visible, and in many cases it would be manifestly unfair and unreasonable to give judgment against a plaintiff because he failed to produce a witness who saw the fire escape from the locomotive and fall upon the combustible matter. This and the other courts of the country generally have recognized the more just rule that where it is shown that there was no fire on the premises before, and no probable cause for the fire except the locomotive; that the wind was blowing from the road to the grass; and that the fire broke out soon after the engine passed—these things are circumstances sufficient to justify the conclusion that the fire was communicated by the train. *Pittsburgh, etc., R. Co.* v. *Indiana Horseshoe Co.* (1899), 154 Ind. 322 [56 N. E. 766], and cases collected on page 333. Under the rule the evidence fully warrants the finding that the fires complained of were set by appellant's passing trains." See, also, *Cleveland, etc., R. Co.* v. *Hayes* (1906), 167 Ind. 454, 460, 79 N. E. 448; *Pittsburgh, etc., R. Co.* v. *Indiana Horseshoe Co., supra; Cincinnati, etc., R. Co.* v. *Smock, supra; Chicago, etc., R. Co.* v. *Ostrander* (1888), 116 Ind. 259-265, 15 N. E. 227, 19 N. E. 110; *Toledo, etc., R. Co.* v. *Sullivan* (1908), 41 Ind. App. 390-393, 83 N. E. 1024; *Pittsburgh, etc., R. Co.* v. *Wilson* (1904), 161 Ind. 701-704, 66 N. E. 899; *Chicago, etc., R. Co.* v. *Kreig* (1899), 22 Ind. App. 393-399, 53 N. E. 1033; *McDoel* v. *Gill* (1899), 23 Ind. App. 95, 53 N. E. 956; *Jacksonville, etc., R. Co.* v. *Peninsular Land, etc., Co.* (1891), 27 Fla. 1 and 157, 9 South. 661, 17 L. R. A. 33 and 65.

One of the witnesses testified concerning the engine in question, that (we quote from appellant's brief) "it threw smoke and cinders all over my team and scared the horses and I called for Shortridge to come out and help me hold them. It was in the neighborhood of 250 to 300 feet from the railroad. The cinders run from three-fourths to half an inch in diameter the smallest way. They fell in showers around my horses and on them. I called Shortridge out to hold them until I got my wood unloaded. There were black clouds of smoke."

A rural mail carrier testified to a similar condition of the sparks and cinders emitted from said engine, and to a similar effect had on the horse which he was unhitching from his buggy.

Numerous other witnesses testified to the size and quantities of the cinders and sparks. There was evidence also that fires were started along the right of way, both east and west of the station of Tunnelton, immediately after the passage of this engine on this particular trip.

The evidence is of a character that fully warranted the verdict of the jury under the law governing such cases as expressed in the decisions cited, and was sufficient, under the well-settled rules of this court, to prevent a reversal on this ground of the motion for a new trial.

Judgment affirmed.

NOTE.—Reported in 98 N. E. 141. See, also, under (1) 38 Cyc. 1778; (2) 38 Cyc. 1711; (3) 33 Cyc. 1381. As to presumptions of negligence arising on proof of mismanagement in respect of the thing the accident is imputed to, see 20 Am. St. 490; 113 Am. St. 986. As to the validity of a law making communication of fire prima facie evidence of negligence, see 62 Am. St. 171. As to the presumption of negligence arising from the communication of fire by a railroad engine, see 1 Ann. Cas. 815; 16 Ann. Cas. 882; 15 L. R. A. 40. And for effect of presumption, from fact that fire was set by locomotive, to carry question of negligence to jury, see 5 L. R. A. (N. S.) 99. As to distance within which sparks from a properly equipped engine will set fire as a subject of expert testi-

mony, see 22 L. R. A. (N. S.) 1039. The authorities on the constitutionality of statute making railroad companies absolutely liable for damages by fire irrespective of negligence are reviewed in notes in 25 L. R. A. 161 and 35 L. R. A. (N. S.) 1016.